ROE et al., Appellants,

v.

FRANKLIN COUNTY et al., Appellees.

[Cite as *Roe v. Franklin Cty.* (1996), 109 Ohio App.3d 772.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE05–655.

Decided March 12, 1996.

*Bradley & Farris Co., L.P.A.,* and *Philip R. Bradley; Patricia L. Grimm,* for appellants.

*Michael Miller,* Franklin County Prosecuting Attorney, *Elizabeth A. Scott* and *Bonnie L. Maxton,* Assistant Prosecuting Attorneys, for appellees.

HOLMES, Judge.

Plaintiffs-appellants, Richard and Sally Roe, a father and minor daughter proceeding under pseudonyms, appeal from a judgment of the Franklin County Court of Common Pleas dismissing their claims against defendants-appellees, Franklin County, Ohio, Franklin County Children Services ("FCCS"), FCCS Executive Director Margaret Sandberg, and FCCS employees Cindy Hartitz, Dawn Claw, and Jane or John Doe, for failure to state a claim pursuant to Civ.R. 12(B)(6).

In 1990, Richard and Jane Roe filed for divorce. The instant action has its genesis in the child custody dispute which arose out of those divorce proceedings.

In November 1990, Jane Roe reported to FCCS that Richard Roe was sexually abusing the couple's daughter, Sally. FCCS began an investigation into the allegations of child abuse, reported Richard's name to the "central registry" [1] as required by R.C. 2151.421(F)(1) and Ohio Adm.Code 5101:2–35–16, and filed a complaint in the Franklin County Juvenile Court alleging that Sally was an abused child as defined by R.C. 2151.031(A), and that Richard was the abuser. In May 1991, a hearing on the allegations of child abuse was held before a juvenile court referee. Following the hearing, and based upon the referee's

---

1. The central registry is a data bank maintained by Ohio Department of Human Services containing the names and other information regarding accused child abusers. R.C. 2151.421(F)(1).

report and recommendations, the juvenile court directed a verdict for Richard, and the sexual abuse complaint was dismissed. Ultimately, Richard was awarded custody of Sally in the underlying divorce proceeding.

Subsequently, Richard and Sally filed the instant action in the Franklin County Court of Common Pleas. Plaintiffs' amended complaint, filed on January 13, 1994, asserted claims against defendants for civil rights violations pursuant to Sections 1983 and 1985(3), Title 42, U.S.Code, intentional infliction of emotional distress, defamation, and engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A) and Section 1962, Title 18, U.S.Code.

On January 26, 1994, defendants filed a motion to dismiss plaintiffs' claims pursuant to Civ.R. 12(B)(6). On April 14, 1994, the trial court rendered a decision granting defendants' motion and dismissing plaintiffs' claims. Plaintiffs appeal therefrom, assigning the following assignments of error:

"1. The Trial Court erred in granting immunity to the County Defendants on page 5 of its Decision of April 14, 1995 because the Trial Court failed to adequately consider whether the County Defendants' Conduct was reckless and/or intentional.

"2. The Trial Court erred on pages 6 and 9 of its Decision of April 14, 1995 dismissing Plaintiffs' Federal Claims in that there exist questions of fact as to whether the County recklessly and inadequately trained Childrens' [sic] Services Employees and whether it was deliberately indifferent to constitutional rights.

"3. The Court below erred on page 11 of its Decision of April 14, 1995 in finding that Plaintiff failed to state a cause of action against the County Defendants for intentional infliction of emotional distress because Defendant has failed to establish any of the defenses set forth in R.C. 2744.02 or 2744.03."

Plaintiffs' three assignments of error will be addressed jointly, as together they challenge the propriety of the trial court's dismissal of plaintiffs' various claims pursuant to Civ.R. 12(B)(6).

Dismissal of a claim pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted is appropriate only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, 1064–1065. In construing a complaint on a motion to dismiss pursuant to Civ.R. 12(B)(6), a court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755–756. However, a court need not presume the truth of conclusions unsupported by factual allegations. *Id.* at 193, 532 N.E.2d at 756.

When reviewing a judgment granting a Civ.R. 12(B)(6) motion for relief from judgment, an appellate court must independently review the complaint to determine if dismissal was appropriate. *McGlone v. Grimshaw* (1993), 86 Ohio App.3d 279, 285, 620 N.E.2d 935, 938–939. The appellate court need not defer to the trial court's decision in Civ.R. 12(B)(6) cases. *Id.*

We begin our review with plaintiffs' claim under Section 1983, Title 42, U.S.Code. Section 1983 provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

 Section 1983 provides a remedy for violations of substantive rights created by the United States Constitution or federal statute. *Barnier v. Szentmiklosi* (E.D.Mich.1983), 565 F.Supp. 869, 871, reversed in part on other grounds (C.A.6, 1987), 810 F.2d 594, 597. In order to state a claim under Section 1983, it must be established that (1) the conduct in controversy was committed by a person acting under color of state law, and (2) the conduct deprived plaintiff of a federal right, either constitutional or statutory. *Parratt v. Taylor* (1981), 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420, 428–429, overruled on other grounds, *Daniels v. Williams* (1986), 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662, 667–668; *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456, 458–459. In the present case, plaintiffs allege that defendants deprived them of their due process and equal protection rights under the Fourteenth Amendment to the United States Constitution.

 To satisfy the "under color of state law" requirement, plaintiffs must show that the conduct complained of was taken pursuant to "power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic* (1941), 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368, 1385. Here, plaintiffs' complaint alleges facts sufficient to establish that defendants were acting "under color of state law" in pursuing the child abuse allegations against Richard. Defendants' alleged misconduct in pursuing the child abuse allegations was taken pursuant to powers granted by virtue of R.C. Chapters 5153 and 2151, and was possible only because FCCS and its employees were clothed with such authority.

██ The Equal Protection Clause of the Fourteenth Amendment prohibits only purposeful, class-based, invidious discrimination. *Harris v. McRae* (1980), 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784, 808; *Washington v. Davis* (1976), 426 U.S. 229, 238–248, 96 S.Ct. 2040, 2046–2050, 48 L.Ed.2d 597, 606–612. Because plaintiffs' complaint fails to allege invidious discrimination of any sort, the trial court correctly dismissed the equal protection aspect of the plaintiffs' 1983 claim. *Barnier*, 565 F.Supp. at 872.

Plaintiffs' due process claim asserts that defendants pursued allegations of child abuse against Richard knowing that the allegations were unfounded, thereby depriving Richard of his right to be "free from coercion by a governmental organization to attempt, through continual threat of litigation and character assassination, to surrender custody of his child, or else risk great expense in defending himself from the malicious prosecution accompanied by public humiliation."

██ Section 1983, however, imposes liability only for violations of federally protected rights. *Baker v. McCollan* (1979), 443 U.S. 137, 146, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433, 442–443. It is well settled that a claim for malicious prosecution standing alone does not implicate federally protected rights. *Torres v. Supt. of Police, Puerto Rico* (C.A.1, 1990), 893 F.2d 404, 409; *Gunderson v. Schlueter* (C.A.8, 1990), 904 F.2d 407, 409; *Coogan v. Wixom* (C.A.6, 1987), 820 F.2d 170, 175. In order to state a claim under Section 1983 for conduct in the nature of malicious prosecution, plaintiffs must show either that they were deprived of procedural due process rights, or that the conduct was so egregious as to violate substantive due process. *Torres.*

██ To establish a procedural due process violation, it must be shown that the conduct complained of deprived plaintiffs of a liberty or property interest without adequate procedural safeguards. *Bd. of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556. Plaintiffs' claim fails to allege the deprivation of any such interest.

██ The expense and inconvenience incurred by Richard in defending against the child abuse allegations do not rise to the level of a taking of a liberty or property interest. See *Vasquez v. Hamtramck* (C.A.6, 1985), 757 F.2d 771, 773. Similarly, the humiliation and injury to Richard's reputation occasioned by defendants' conduct are insufficient to support a procedural due process claim. Damage to reputation by itself does not constitute the taking of liberty or property. *Paul v. Davis* (1976), 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405, 413–414.

██ The final element of plaintiffs' procedural due process claim deals with defendants' allegedly malicious interference with Richard's relationship with his

daughter. It is true that courts have found that the parent-child relationship gives rise to a liberty interest. *Bell v. Milwaukee* (C.A.7, 1984), 746 F.2d 1205, 1243; *Morrison v. Jones* (C.A.9, 1979), 607 F.2d 1269, 1276. Indeed the United States Supreme Court has held that where the state seeks to separate a parent from his or her child, procedural safeguards are required to protect their liberty interests. *Lassiter v. Dept. of Social Serv.* (1981), 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640, 649–650. Here, however, plaintiffs' complaint fails to allege any deprivation of the parent-child relationship. Plaintiffs' complaint alleges only that defendants' sought to separate Richard from Sally, but does not allege that Richard was even temporarily deprived of custody of his daughter. Thus, plaintiffs have failed to state a procedural due process claim.

In order to state a claim for deprivation of substantive due process rights, plaintiffs must establish that defendants' conduct constituted an invasion " 'into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience.' " *Barnier,* 565 F.Supp. at 880 (quoting *Johnson v. Glick* [C.A.2, 1973], 481 F.2d 1028, 1033; see, also, *Torres* at 410; *Gunderson* at 410. Where plaintiff has not been physically abused or detained, the courts will not find " 'conscience-shocking' conduct." *Torres,* 893 F.2d 404 (police officers claim that they were fired from their jobs and charged with felonies as a result of their having detected criminal activity of other officers, not sufficient to violate substantive due process); *Johnson v. Barker* (C.A.9, 1986), 799 F.2d 1396, 1400 (harassment, arrest, and citation of plaintiffs by sheriff did not rise to the level of substantive due process violation); *Conway v. Mount Kisco, New York* (C.A.2, 1985), 758 F.2d 46, 48 (conspiracy by city official and auto dealership to charge plaintiff with writing a bad check, which resulted in plaintiff being arrested and detained for seven hours was sufficient to violate substantive due process); *Barnier,* 565 F.Supp. at 880 (intentional filing of unfounded felony charges against plaintiffs by police officers did not violate substantive due process).

Here, plaintiffs allege that defendants maliciously pursued allegations of child abuse, with knowledge that the allegations were unfounded, in an attempt to coerce Richard to surrender custody of his daughter. Although the conduct alleged by plaintiffs is reprehensible in the extreme, it does not rise to the level of a substantive due process violation, as there is no allegation that plaintiffs were detained or physically abused in any manner. Mere misuse of legal process is not sufficient to sustain a substantive due process claim. *Torres.*

In their brief, plaintiffs argue that their 1983 claim included a policy or custom component under the Supreme Court's holding in *Monell v. Dept. of Social Serv.* (1978), 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. Because plaintiffs' Section 1983 claim does meet the threshold requirement of alleging a deprivation of a

federal right, we need not reach the question of whether plaintiffs' complaint satisfied *Monell.* Plaintiffs have failed to state a claim under Section 1983 upon which relief can be granted.

 We now turn to plaintiffs' claim under Section 1985(3), Title 42, U.S.Code.[2] "Section 1985(3) provides a private civil remedy for persons injured by conspiracies to deprive them of their right to equal protection under the laws." *de Botton v. Marple Twp.* (E.D.Pa., 1988), 689 F.Supp. 477, 482. In order to establish a claim under Section 1985(3), a plaintiff must allege and prove the existence of a conspiracy, aimed at interfering with any right or privilege[3] of a citizen of the United States, and that the conspirators were motivated by a racial or perhaps other class-based, invidiously discriminatory animus. See *Bray v. Alexandria Women's Health Clinic* (1993), 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34; *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott* (1983), 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049; *Griffin v. Breckenridge* (1971), 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338.

Plaintiffs' Section 1985(3) claim alleges that defendants "conspired to present false, defamatory, and perjured testimony to the Franklin County Court," in violation of plaintiffs' Fourteenth Amendment rights to equal protection of the laws. Notwithstanding its conclusory references to a denial of equal protection, plaintiffs' claim fails to specify a single right or privilege impaired by defendants' alleged conspiracy, much less that defendants' conduct was aimed at impairing such a right. Further, there is no allegation in plaintiffs' complaint that defendants were motivated by a class-based discriminatory animus. In fact,

---

**2.** Section 1985(3) provides as follows:

"If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice–President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

**3.** Because plaintiffs have alleged a conspiracy under color of state law, rather than a private conspiracy, the right or privilege need not be one that is protected against private as well as official encroachment, such as the right to interstate travel. *Bray,* 506 U.S. at 277–279, 113 S.Ct. at 764, 122 L.Ed.2d at 51–52.

plaintiffs have set forth no class of which they are members. Plaintiffs have failed to state a Section 1985(3) claim upon which relief can be granted.

■■■ Plaintiffs' complaint also asserts state and federal RICO claims. Although plaintiffs' complaint is less than clear in this respect, we read it as alleging that defendants conducted or participated in the affairs of FCCS through a pattern of corrupt activity or racketeering, namely attempting to coerce Richard to surrender custody of Sally by maliciously prosecuting him for sexual abuse, in violation of Section 1962(c), Title 18, U.S.Code, and R.C. 2923.32(A)(1). Section 1962(c) provides as follows:

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

R.C. 2923.32(A)(1) provides as follows:

"No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."

Liability under both Section 1962(c) and R.C. 2923.32(A)(1) is premised on the commission of two or more predicate crimes constituting "racketeering activity." [4] R.C. 2923.31(E); Section 1961(5), Title 18, U.S.Code; *Alexander v. United States* (1993), 509 U.S. 544, 561–562, 113 S.Ct. 2766, 2777, 125 L.Ed.2d 441, 457–458 (Souter, J., concurring in part and dissenting in part); *State v. Thrower* (1989), 62 Ohio App.3d 359, 369, 575 N.E.2d 863, 869–870. In addition, pursuant to Section 1961(1)(A), Title 18, U.S.Code,[5] and R.C. 2923.31(E)[6] at least one of the predicate acts of "racketeering activity" must constitute a felony.

---

**4.** Because "corrupt activity" under R.C. 2923.32(A)(1) and "racketeering activity" under Section 1962(c) are synonymous for purposes of our discussion, we will use the term "racketeering activity" to refer to both. See R.C. 2923.31(I); Section 1961(1)(A), Title 18, U.S.Code.

**5.** Section 1961(1)(A) provides as follows: " 'racketeering activity' means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act * * *), which is chargeable under State law and *punishable by imprisonment for more than one year*." (Emphasis added.)

**6.** R.C. 2923.31(E) provides in relevant part as follows:
" 'Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

Plaintiffs premise their RICO claims on the predicate offense of "coercion" in violation of R.C. 2905.12. However, R.C. 2905.12(D) expressly provides that "coercion" is a misdemeanor of the second degree. Consequently, plaintiffs have failed to state either a federal or state RICO claim upon which relief can be granted.

Plaintiffs also assert a claim for malicious prosecution based upon defendants' filing of a child abuse complaint in the Franklin County Juvenile Court. The proceeding in juvenile court took place pursuant to R.C. Chapter 2151, and although Richard did face the possibility of permanently losing custody of his daughter in that proceeding, it is well settled that a juvenile court proceeding is not criminal in nature. See *State v. Weeks* (1987), 37 Ohio App.3d 65, 66, 523 N.E.2d 532, 533–534. Therefore, we will treat plaintiffs' claim as one for malicious civil prosecution.

In order to state a claim for malicious civil prosecution in Ohio, four elements must be alleged: (1) malicious institution of prior proceedings against the plaintiff by defendant, (2) lack of probable cause for the filing of the prior lawsuit, (3) termination of the prior proceedings in plaintiff's favor, and (4) seizure of plaintiff's person or property during the course of the prior proceedings. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 295, 626 N.E.2d 115, 116. Plaintiffs' complaint clearly alleges the first three elements of a claim for malicious civil prosecution. However, plaintiffs have not alleged a seizure of either their persons or property by defendants. While plaintiffs' brief suggests that FCCS temporarily obtained custody of Sally during the pendency of the child abuse proceeding, we need not decide whether this action would satisfy the seizure requirement of a claim for malicious prosecution, as only matters contained in the complaint may be considered in ruling on a Civ.R. 12(B)(6) motion to dismiss. See *McGlone.* Plaintiffs' complaint fails to state a claim for malicious civil prosecution upon which relief can be granted.

Plaintiffs have also asserted a claim for intentional infliction of emotional distress. In order to prevail on a claim of intentional infliction of emotional distress, plaintiffs must prove (1) that defendants either intended to cause emotional distress, or knew or should have known that their conduct would result in serious emotional distress to plaintiffs; (2) that defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was

---

"* * *

"For the purposes of the criminal penalties that may be imposed pursuant to section 2923.32 of the Revised Code, *at least one of the incidents forming the pattern shall constitute a felony under the laws of this state* or, if committed in violation of the laws of the United States or of any other state, would constitute a felony under the law of this state if committed in this state." (Emphasis added.)

such that it can be considered utterly intolerable in a civilized community; (3) that defendants' conduct was the proximate cause of plaintiffs' psychic injury; and (4) that plaintiffs suffered serious emotional distress, such that no reasonable person could be expected to endure it. *Jackson v. Wooster Bd. of Edn.* (1985), 29 Ohio App.3d 210, 211–212, 29 OBR 254, 255–257, 504 N.E.2d 1144, 1145–1147.

As noted, plaintiffs' complaint alleges that defendants maliciously pursued a claim that Richard sexually abused his daughter, knowing that the claim was unfounded, for the purpose of coercing Richard to give up custody of his daughter, and that Richard has suffered "humiliation, embarrassment, and physical and mental suffering" as a result of defendants' conduct.

While plaintiffs' allegations may well be sufficient to satisfy the first three elements of a claim for intentional infliction of emotional distress, plaintiffs have not alleged that Richard suffered the type of serious mental anguish required to state a claim for intentional infliction of emotional distress. "Serious emotional distress describes emotional injury which is both severe and debilitating." *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraph 3(a) of the syllabus. Plaintiffs' complaint alleges neither that Richard is debilitated as a result of defendants' conduct nor that he suffers from a mental or emotional condition sufficient to constitute serious emotional distress. See *id.* at 78, 6 OBR at 119–120, 451 N.E.2d at 765–766; *Dickerson v. Internatl. United Auto Workers Union* (1994), 98 Ohio App.3d 171, 178–183, 648 N.E.2d 40, 44–48. Plaintiffs have failed to state a claim for intentional infliction of emotional distress upon which relief can be granted.

Finally, although not a model of clarity, plaintiffs' complaint asserts a claim for defamation. In order to state a claim for defamation upon which relief can be granted, plaintiffs' complaint must allege that defendants "published" a false statement of fact about the plaintiffs, that the statement caused actual harm to plaintiffs' reputation, exposed them to public hatred, contempt, ridicule, shame or disgrace, or affected them adversely in their trade or business, and that defendants are guilty of some degree of fault. See *Stow v. Coville* (1994), 96 Ohio App.3d 70, 72–73, 644 N.E.2d 673, 674–675; *Rogers v. Buckel* (1992), 83 Ohio App.3d 653, 659, 615 N.E.2d 669, 672–673; *Ohio Savings Assn. v. Business First of Columbus, Inc.* (1988), 43 Ohio App.3d 215, 217, 540 N.E.2d 320, 322–323. Where the plaintiff is a "private figure," the requisite degree of fault is ordinary negligence. *Embers Supper Club, Inc. v. Scripps–Howard Broadcasting Co.* (1984), 9 Ohio St.3d 22, 25, 9 OBR 115, 117–118, 457 N.E.2d 1164, 1167. However, where the defendant establishes, as an affirmative defense, either that the plaintiff is a "public figure" or that the allegedly defamatory statement was "conditionally privileged," the requisite degree of fault rises to actual malice. See *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11

L.Ed.2d 686, 706–707; *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 244, 72 O.O.2d 134, 138–139, 331 N.E.2d 713, 718–719; *Black v. Cleveland Police Dept.* (1994), 96 Ohio App.3d 84, 88, 644 N.E.2d 682, 684.

▆ Plaintiffs' complaint alleges that defendants "published" false statements regarding Richard having sexually abused his daughter when they filed a complaint to that effect in the Franklin County Juvenile Court, and by placing Richard's name on the central registry. Plaintiffs' complaint further alleges that Richard has suffered public humiliation as a result of defendants' action. Finally, plaintiffs' complaint alleges that defendants maliciously "published" the false statements about Richard. Accepting these allegations as true, as we must on a Civ.R. 12(B)(6) motion to dismiss, plaintiffs have stated a claim for defamation upon which relief can be granted. In so holding, we render no judgment with respect to defendants' ability to establish any effective defense.

▆ In closing, we note that plaintiffs argue extensively in their brief that defendants are not entitled to governmental immunity.[7] Governmental immunity is an affirmative defense which presents issues not normally amenable to resolution on a Civ.R. 12(B)(6) motion to dismiss. *Roe v. Hamilton Cty. Dept. of Human Serv.* (1988), 53 Ohio App.3d 120, 123, 560 N.E.2d 238, 241. Further, because plaintiffs' complaint fails to state Sections 1983, 1985(3), RICO, malicious prosecution, or intentional infliction of emotional distress claims upon which relief can be granted, the question of whether defendants are immune to these claims is never reached.

To the limited extent that plaintiffs' complaint states a claim for defamation upon which relief can be granted, plaintiffs' three assignments of error are sustained; with respect to all other matters, they are overruled.

Having sustained plaintiffs' three assignments of error in part and overruled them in part, we reverse the judgment of the trial court and remand this matter to the trial court for further proceedings consistent herewith.

*Judgment reversed*
*and cause remanded.*

PEGGY BRYANT and TYACK, JJ., concur.

ROBERT E. HOLMES, J., retired, of the Supreme Court of Ohio, sitting by assignment.

---

7. Although plaintiffs refer generally to immunity in their brief, plaintiffs' complaint potentially involved two separate and distinct concepts of governmental immunity, the statutory immunity provided by R.C. Chapter 2744, which applies to state law claims, and the federal doctrine of qualified immunity, which applies solely to federal claims.